**MAJOR COAT COMPANY, INC.**

v.

**The UNITED STATES.**

No. 31–72.

United States Court of Claims.

Feb. 4, 1977.

Theodore M. Kostos, Philadelphia, Pa., atty. of record, for plaintiff; Stassen, Kostos & Mason, Philadelphia, Pa., of counsel.

Raymond B. Benzinger, Washington, D. C., with whom was Asst. Atty. Gen., Rex E. Lee, Washington, D. C., for defendant; Donald W. Crockett, Washington, D. C., of counsel.

Before DAVIS, Judge Presiding, LARAMORE, Senior Judge, and BENNETT, Judge.

## ORDER

This case comes before the court on defendant's motion, filed December 3, 1976, for rehearing *en banc* pursuant to Rules 7(d) and 151. Upon consideration thereof, together with the response in opposition

thereto, without oral argument, by the seven active judges of the court as to the suggestion for rehearing *en banc* under Rule 7(d), the suggestion is denied. The case has further been so considered by the panel listed above as to the motion for rehearing under Rule 151.

Plaintiff, in its response opposing defendant's suggestion, has requested a clarification "as to whether [the court] deducted the added costs for tooling expenses and building construction * * * before it made its assessment of one-half of the earnings actually realized." The court affirms that it did allow as a renegotiable expense and did deduct the $78,500 amount, relating to plaintiff's special tools and new building. What is apparently confusing plaintiff is its perception that the court intended to let it retain about 50 percent of its renegotiable profits (a figure calculated, of course, by first subtracting all renegotiable expenses, including the $78,500 sum). The court, however, did not allow plaintiff to keep one-half of its *earnings*, but rather concluded to leave it "with fully one-half of the *rate* of earnings it actually realized * *." 211 Ct.Cl. ——, 543 F.2d 97 (1976). (Emphasis added.) Plaintiff, then should have been, and was, allowed to retain slightly more than one-half of its renegotiable profit rate, 16 percent out of 30.2 percent excluding GFP, and 11 percent out of 21.9 percent including GFP.

IT IS THEREFORE ORDERED that defendant's said motion for rehearing be and the same is denied.

DAVIS, Judge, concurring:

I have voted against rehearing *en banc* and, as a member of the panel, I also reject the defendant's motion for rehearing addressed to the three judges. Accordingly, I accept and concur in the court's order but I wish to make it explicit that I agree with Judge Nichols that (a) the opinion in the present case does not prescribe any fixed or "correct" formula for renegotiation in this court, to the exclusion of other appropriate methods of reaching a just result, such as that used in *Butkin Precision Mfg. Corp. v. United States*, 544 F.2d 499, 211 Ct.Cl. ——, 1976; (b) however, in many cases, if not most, the histories of comparable companies (particularly the profit histories) furnish relevant and significant information helpful in the renegotiation of a plaintiff company; and (c) the defendant has not made, but should make, a solid effort to put before the court, as part of the Government's case, at least as much of the comparative data which was before and used by the Renegotiation Board, in determining the excessive profits of the particular plaintiff, as can be presented without unduly impinging on the rights of third parties.[1]

I add that I am not yet convinced that it will be too burdensome for the Government (i) to bring forward the relevant information which it can properly obtain from the Board for use in this court, and if necessary (ii) to put in as part of its case, either through expert testimony or documentary materials, other pertinent information bearing on comparative profits which will tend to support defendant's position in the specific litigation. But if it should turn out, after a fair trial-period, that defendant cannot reasonably be expected to produce either of these types of evidence, then the court will face, as I forecast it, the problem of whether to loosen the requirements on the defendant or to decide that under the Renegotiation Act as it now exists[2] a fair determination of excessive profits simply cannot be made by this Article III court in the absence of those categories of information.

NICHOLS, Judge, concurring:

I voted to deny the defendant's motion for rehearing en banc and wish to indulge

---

1. The contours and limits are sketched in the opinions in *Instruments Systems Corp. v. United States*, Ct.Cl., 546 F.2d 357, and *Marinette Marine Corp. v. United States*, Ct.Cl., 546 F.2d 365, both decided Dec. 15, 1976.

2. I refer especially to the requirement of a *de novo* court trial and to the statutory permission to the Government to seek a higher determination of excessive profits than that made by the Renegotiation Board.

in the infrequently exercised privilege of stating why:

I was, of course, particularly concerned about the inconsistency alleged by defendant to exist between the instant decision and the one in *Butkin Precision Mfg. Co. v. United States*, 544 F.2d 499, 211 Ct.Cl. —— (1976). It might be supposed that judges would have sufficient common sense, that the writer of each opinion would read the other before the respective panels voted. This in fact occurred, and neither judge suggested any change in the opinion of the other. It is possible that each decision would be different in technique and approach if written by the other judge, though the one in *Butkin*, at least, owed its structure largely to the choices of the parties, in presenting their evidence and contentions. Defendant's able expert presented us with a technique, if you like, which we employed, only taking into account and fitting into place certain considerations we did not think he gave enough weight to. The evidence in *Major Coat* was, of course, different. Defendant seems to believe the opinion in that case prescribes a fixed formula, one it says is impractical to follow. There is no fixed formula in renegotiation. A fact finder who decently respects the evidence, the statutory factors, and the Board regulations construing them (so far as reasonable or enjoying a presumption of Congressional ratification) is free to approach his conclusion in a variety of different ways. Congress did not tie our hands in prescribing the factors. The Renegotiation Board, despite much interpretative publication, may have leaned over backwards to avoid binding its exercise of discretion in advance; at least, at one time I thought it should have published more than it had. Just as in *Butkin*, we reached the same result as the trial judge, by a different route, I would presume we might have reached the *Major Coat* result by the *Butkin* route. In my view, neither decision was intended or could properly have undertaken to prescribe a formula to the exclusion of others, or make its own technique of adjudication the exclusive one to be employed thereafter. As Mahomet wisely remarked,

there are many ways of getting to paradise. It follows that defendant is not hampered in sustaining its burden of proof according to whatever theory it can persuasively advance.

The court did intend, in *Major Coat* as in almost all our reported cases to date, to sound a note of dissatisfaction with the evidence defendant has in fact used to prove its cases. We presume in favor of the Renegotiation Board, as we would in favor of any official body, that it acts in good faith on the basis of information it deems adequate, and that it follows its own regulations. Therefore it really must, we believe, exactly as its regulations say, consider comparative companies when it applies the factors, for several purposes. Yet defendant comes into this court saying it does not have comparison information and it is up to the plaintiff to supply it. In *Major Coat* defendant attached to its motion for rehearing tabulations showing the profit history of comparable companies. The plaintiff responded that it had obtained these tabulations for the record by discovery, over defendant's vigorous objection. And so it goes. As noted in *Instrument Systems Corp. v. United States*, Ct.Cl., 546 F.2d 357 (1976) defendant there frankly acknowledged that its policy was to keep out of our cases entirely all use of specific third-party company data for comparison purposes. A few freak cases aside, defendant cannot persuade this court that the evidence does not exist, that the administrative body whose decision occasioned the appeal here did not have it and use it, or that it is plaintiff who has elected not to supply it here. As a broad general proposition, with perhaps exceptions of significance, if the court feels that evidence of this kind is needed for an informed and reasoned adjudication, and that it exists and was used by the tribunal below, it is defendant who must lose, under our burden of proof pronouncements, if it is not in the record.

Another factor is relative resources. Butkin was a small company, badly crippled by its loss of war business and unable to

furnish a bond to stay collection of the refunds the Board proposed. Defendant employed in preparation against it, according to the record, 206 days of FBI agent time, not counting the overtime FBI agents always put in. Yet those agents could not, ostensibly, spare the hour or two that would have been required to obtain from Avco, Butkin's prime contractor, data as to the performance of other subcontractors to Avco who furnished the same components Butkin furnished, including the extent to which they were aided in so doing by Butkin's technical assistance. From the cases that have come before us to date, I deduce that it will not be the giants of defense industry, but the little and often impoverished Butkins, who will furnish the bulk in number of our renegotiation appeals. Defendant will employ resources to defeat them that they cannot match. This, too, sustains the reasonableness of our burden of proof allocation. Defendant should have the burden of supplying comparative data available not only from its own files, but from other sources equally accessible to it and to the plaintiff.

The Tax Court assigned to the contractor the burden of proving the Board wrong. The Board's decision, and its statement of reasons, had to be attached to the petition. In reassigning the burden as we did, we were quite frankly seeking to make ground rules for a fairer contest. However, the Tax Court procedure had certain advantages for the contractor too. He could rely on parts of the Board decision that were favorable to him, and its fact findings might inure to his benefit, without cost or effort by him. Defendant here would take that advantage away and thus, under our procedure, make the sustaining of an appeal harder and more costly instead of easier and cheaper. I do not think this consequence need follow: even if the Board's decision enjoys no presumption of correctness, it does not follow that the contractor is not entitled to benefit from the Board's data gathering and factual conclusions. I wish it had been routine in every case here to put in the record the Board's decision and statement of reasons, for whatever value it might have.

Defendant in its instant motion says the Tax Court presumed that the Renegotiation Board had expertise. This is something defendant is not now guilty of. By seeking, in so many cases, if not in all, to show that the Board decision is grossly insufficient, it displays a belief that the Board lacks expertise. A consequence of course is that it cannot use Board members or staff as expert witnesses. Such a person would stultify himself if he testified in support of a refund 50 percent more than his agency had proposed. Where defendant so glaringly lacks confidence in the Board's expertise, it cannot expect the court to supply it. Plaintiffs usually cannot afford experts. Their counsel in some instances may believe they themselves can double as experts, though this runs up against the rule that counsel does not testify. Defendant, having cut itself off from the most natural and obvious source of testimonial support, has had difficulty convincing us with the experts it has substituted. Renegotiation, like other human activities of long duration, has its wearers of the old school tie. Defendant's experts, as a rule, are manifestly not of that caste. They lack the experience so many people have shared since 1942, of actually renegotiating defense contracts and subcontracts. I do not think the statutory *de novo* character of our proceeding, with our shift in the burden of proof, together or separately mandate the complete eclipse of the Board and its personnel that has occurred.

Defendant in the rehearing motion before us has been blunt, far beyond the criticisms usual in rehearing motions. It says we have denied it the possibility of success in future renegotiation trials here, and fouled up the future operations of the administrative board. I respect bluntness in advocacy, and wish we had more of it. But it invites bluntness in return. I have been blunt and I will further bluntly say the prospects of success of defendant in future renegotiation cases here are less than rosy, unless it can persuade itself to adapt to our decisions.

This is not, however, to say I think defendant should have done markedly better than it did, in our reported decisions to date, with a different style of advocacy, or other testimony. In most of them, plaintiffs had things going for them that no procedure or allocation of burden of proof could have leached away. This is markedly true of the case immediately before us. *Major Coat Co.* had government business forced on it against its will, and had to drop its major civilian customers, as a result, to its great and apparently lasting detriment. At least, in our other reported cases, the contractors were in defense business voluntarily. *Cf.* observations of Cowen, Chief Judge, in *Sandnes' Sons, Inc. v. United States*, 462 F.2d 1388, 1395, 199 Ct.Cl. 107, 120 (1972):

> The most important consideration, and one which the plaintiff has failed to meet, is that it became subject to renegotiation only because it voluntarily entered into contractual relationships with the United States. That its contracts would be subject to renegotiation was expressly stated in the contracts; it is inarguable that the plaintiff is chargeable with knowledge of the terms of its contracts and the statutes and regulations governing Federal procurement. * * *

While the court's fact recitals show that Major Coat did sign the contracts awarded to it, they also strongly suggest duress or at least compulsion, which in law may not be the same thing exactly. I would not automatically exempt from renegotiation a contract awarded under such circumstances since I do not think the law does so, but I would determine excessive profits and assess a refund only with the greatest hesitation, on clear and convincing evidence that the profits were, under all the statutory factors, excessive. In World War II, when renegotiation started, all defense contracting, practically, was subject to "rated orders." In the Vietnam war situation, the burden on Major Coat was special and peculiar. The Army seems to have also used rated orders in *Blue Bell, Inc. v. United States*, No. 603–71, but without the degree either of coercion or of detriment to the contractor, shown in *Major Coat*. In World War II a manufacturer practically had to have rated orders so he could stay in business. He needed the ratings to pass on to his suppliers. Thus, a "rated order" was then a benefit, even a necessity, not a detriment.

I am unable to say the panel's treatment of the *Major Coat* circumstances is unwarranted, but I will say that on a first superficial reading of the opinion, I felt surprise that the panel should adjudicate as large a refund as it did. We have no motion for rehearing by plaintiff before us, so I have not considered how I would have voted had there been one. Defendant is fortunate that, in gaining experience as to what to avoid, it has not lost the taxpayers any substantial amount that they should have saved.

Defendant in its motion referred to various decisions by our trial judges that have not come before us for final adjudication. I have taken defendant's word, more or less, for what these decisions hold, but I have not obtained and read them. I think the parties are entitled to have those cases reviewed by us at the appropriate time in accordance with our rules, and not by anticipation. *Instrument Systems Corp., supra*, was different in that in a matter of trial procedure, the inconsistency of several trial division orders was expressly made the basis of a request for review. The orders in question might have been subsumed in the final disposition of the cases (as one was) and the evil defendant complained of might have continued indefinitely without ever being corrected if we had not initiated a review and considered the inconsistency. That is not the situation here.